# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1562-17T2

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

F.R.,

     Defendant-Appellant

and

D.M.-R,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF V.R.
and S.R.,

     Minors.

_____

Submitted December 18, 2018 – Decided January 9, 2019

Before Judges Hoffman and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FG-19-0022-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Lauren M. Derasmo, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Victoria Almeida Galinski, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant F.R. appeals from the judgment of guardianship terminating his parental rights to his children, fourteen-year-old V.R. (Victor),[1] and thirteen-year-old S.R. (Sara). The children's Law Guardian and the Division of Child Protection and Permanency (Division) urge us to affirm. Following our review of the record, we affirm the judgment, substantially for the reasons stated by Judge Michael C. Gaus in his oral opinion. The factual findings of Judge Gaus are supported by substantial credible evidence, including his evaluation of

---

[1] We use initials and pseudonyms to protect the parties' privacy.

A-1562-17T2

witness credibility, and based on those findings, his legal conclusions are correct.

I

The Division began investigating defendant when the children's mother sought a restraining order against him in December 2013. In seeking the restraining order, she alleged defendant had raped her adult daughter, Julie,[2] and claimed she now feared for her younger children.[3]

Victor told investigators defendant made him and Sara sleep naked with him and defendant touched his penis while in bed. Sara also said defendant had rubbed her vagina. The Division sent the children for psychosocial evaluations and later concluded the allegations of abuse were substantiated. In March 2016, the Division placed the children with their older brother and his girlfriend, where they remain.

Defendant denied touching the children inappropriately and challenged the Division's findings. The Division referred the matter to the Office of Administrative Law (OAL) for a hearing. However, when the children did not testify at the hearing, the Administrative Law Judge (ALJ) determined the

---

[2] Defendant is not Julie's biological father.

[3] The children's mother died during the termination proceedings.

<span style="float:right">A-1562-17T2</span>

Division had not produced sufficient credible evidence to substantiate the charges.

In September 2016, as part of a reunification process, defendant attended a psychological evaluation performed by Dr. Barry Katz; however, defendant did not respond to attempts to schedule follow up visits. He also missed appointments for psychiatric evaluations and failed to participate in individual therapy. Defendant often lost contact with the Division for extended periods of time.

The children entered therapy and told their counselors "we don't see [defendant] because he used to, like, sexually abuse us." According to Sara, defendant exposed her to pornography. She also disclosed that defendant "touched my private, my butt and my boobies with his hand. He touched my vagina inside and outside with his hand."

In August 2016, the Division filed the guardianship complaint under review. In July 2017, the matter proceeded to trial, where the children testified. Defendant did not attend trial on the day of their testimony, but his attorney appeared via telephone – without objection – due to an illness. Defendant's counsel declined to question the children.

Victor testified his parents acted violently toward each other, with defendant once hitting his mother's eye with a brush. He also testified defendant touched him in bed and in the shower. The touching in the shower occurred daily and made Victor feel uncomfortable and "weirded out." Victor does not want to live with his father, does not want visits with his father, and wants to be adopted by his older brother and his girlfriend.

Sara testified she saw defendant grab her mother by the throat and that he would smack her (Sara) on the "butt," making the area become very red. Defendant would also touch her vaginal area. Like Victor, she does not feel safe with defendant and does not wish to visit him.

On the next day of trial, defendant sought to strike the children's testimony on the grounds of collateral estoppel due to the ALJ's finding. The judge denied the request.

Dr. Katz testified as an expert in psychology and bonding. Defendant admitted to him three incidents of oral sex with Julie. Dr. Katz said defendant described Julie as a "prostitute" and admitted paying her for sex so she could buy drugs.

Defendant denied to Dr. Katz that he ever slept naked with his children, but admitted to taking baths and showers with them. He also revealed that his

primary income from 2006-2009 – the last time he worked – came from playing cards online.

Based on these admissions, Dr. Katz stated defendant exhibited impaired impulses and poor boundaries with regard to the children, but did not conclude defendant had committed sexual abuse of the children. Nonetheless, he opined the children suffered from multiple traumas including domestic violence, neglect, and inappropriate sexual behavior. Dr. Katz stated removing the children from their brother would be "catastrophic," leading to significant harm, and that defendant could not ameliorate the harm of removal, but would likely increase the harm.

Defendant also testified at trial. He denied hitting and hurting the children's mother. He did not seek reunification with the children. After his testimony, he requested his mother testify via telephone to rebut statements Dr. Katz made about defendant's treatment of her. The court denied the request because defendant had not provided advance notice he would present her testimony.

On appeal, defendant raises the following points of argument:

I. STANDARD OF REVIEW

A-1562-17T2

## II. THE MANY PROCEDURAL VIOLATIONS COMMITTED BY THE LOWER COURT MERIT REVERSAL OF THE TERMINATION OF PARENTAL RIGHTS

A. The Lower Court Erred In Determining That Res Judicata And Collateral Estoppel Did Not Apply.

1. The Issues Litigated In The OAL Are Identical To Those Litigated At Trial.

2. The Issue Of F.R.'s Abuse Of His Children Was Actually Litigated In The OAL.

3. Judge Monaco's Decision Is A Final Judgment On The Merits.

4. The Determination Of Whether F.R. Abused His Children Was Essential To The Prior Decision And The Parties Are Identical.

5. The Lower Court's Reliance On R.D. Is Misplaced.

6. Collateral Estoppel Is Not Avoided With A Change In Nomenclature.

7. The Lower Court Erred In Finding That It Was Not Bound By The OAL Decision.

8. The Lower Court Erred In Not Applying The Entire Controversy Doctrine.

B. The Lower Court Abused Its Discretion By Failing To Adjourn When Counsel Could Not Be Present. (Not Raised Below)

C. F.R. Was Denied The Right To Notice Due To DCPP's Mid-Trial Change Of Reasons For Termination. (Not Raised Below)

7

D. The Lower Court Erred In Barring F.R.'s Mother From Testifying.

III. REVERSAL OF THE TERMINATION OF PARENTAL RIGHTS IS WARRANTED BECAUSE IT IS THE RESULT OF INEFFECTIVE ASSISTANCE OF F.R.'S TRIAL COUNSEL. (Not Raised Below)

A. By Agreeing To Appear By Phone During The Children's Testimony Counsel Inappropriately Waived F.R.'s Rights. (Not Raised Below)

B. Counsel Failed To Sequester DCPP's Expert Thereby Allowing The Expert To Alter His Testimony. (Not Raised Below)

C. Counsel Failed To Object To The Introduction Of The Reports OF Experts Who Did Not Testify. (Not Raised Below)

IV. THERE IS NOT SUFFICIENT, CREDIBLE EVIDENCE TO SUPPORT THE TRIAL COURT'S DETERMINATION THAT DCPP HAS CARRIED ITS BURDEN OF PROOF AS TO ALL FOUR PRONGS OF N.J.S.A. 30:4C-15.1A

A. F.R. Has Not Harmed His Children Within The Meaning Of N.J.S.A. 30:4C-15.1(a)(1).

B. The Trial Court's Decision That The Second Prong Of The Statute Was Satisfied Was Not Supported By Substantial, Credible Evidence.

C. The Record Does Not Contain Sufficient Evidence To Support A Finding That DCPP Met Its Burden Of Proof Under The Third Prong Of The Statute.

D. The Conclusion That Termination Would Not Do More Harm Than Good Was Not Supported By The Evidence.

## II

We exercise limited review of a decision terminating a parent's rights. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 278-79 (2007). Factual findings supporting such a judgment "should not be disturbed unless 'they are so wholly insupportable as to result in a denial of justice,' and should be upheld whenever they are 'supported by adequate, substantial[,] and credible evidence.'" In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). The Family Part's findings should stand unless "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, 65 N.J. at 484 (citing Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, we accord no special deference to the Family judge's interpretation of the law and the legal consequences that flow from established facts. See N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 183 (2010).

Defendant first argues four procedural errors warrant reversal: 1) collateral estoppel should have prevented any further litigation of the abuse claims; 2) the trial judge improperly coerced defendant's attorney to appear via

telephone during the children's testimony; 3) the Division impermissibly changed its reason for termination during the trial, depriving defendant of due process; and 4) the trial court incorrectly barred defendant's mother from testifying.

Collateral estoppel "bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." State v. Gonzalez, 75 N.J. 181, 186 (1977). Defendant argues the OAL hearing on Title Nine abuse allegations litigated issues identical to the Title 30 termination trial because both relied on allegations of sexual abuse and misconduct. Our Supreme Court has outlined the process for when a Title Nine hearing may have preclusive effect on a Title 30 case. See N.J. Div. of Youth & Family Servs. v. R.D., 207 N.J. 88 (2011). In R.D., the court stated "three major but basic" steps for the tribunal to follow. Id. at 120.

> First, the Title Nine court must provide advance notice to the parties that, if supported by the proofs, it will make its findings using the higher Title Thirty "clear and convincing evidence" standard; that notice must be clear and unequivocal, and must fairly and reasonably advise the parties that any Title Nine determinations made under the higher, clear and convincing evidence standard will have preclusive effect in any subsequent Title Thirty proceeding. Stated differently, the parties must be on fair notice that they will have one opportunity to litigate whether the parent is causing

A-1562-17T2

harm to the child, and that opportunity will be during the Title Nine proceedings.

Second, the Title Nine court must make clear to the parties that, although the relief it may issue in the Title Nine portion of the proceedings is, by its nature, interim, the determinations made in respect of that interim relief – particularly those concerning harm to the child – may have preclusive effect on the final, permanent relief arising out of a Title Thirty proceeding. Third, and finally, to approximate parity in the proceedings, the Title Nine court must relax the time deadlines and, to the extent necessary, use in the Title Nine proceeding the admissibility of evidence standards applicable to Title Thirty proceedings.

[Id. at 120-21].

The record does not demonstrate the ALJ followed these procedural guideposts nor that defendant requested the ALJ do so. Defendant argues against R.D.'s application by citing factual differences between the cases: R.D. involved an instance where the Division attempted to use collateral estoppel, while this case presents the opposite scenario.

However, the Court's guidance in R.D. clearly prohibits the ruling defendant seeks. Unless the tribunal follows the steps outlined above, "Title Nine determinations cannot be given collateral or preclusive effect in any subsequent and related Title Thirty proceedings." Id. at 93 (emphasis added).

11

Accordingly, the trial court did not err in rejecting defendant's collateral estoppel argument.

Defendant also argues the trial judge "pressured" his counsel into making an appearance via telephone while sick. An examination of the record finds no evidence to support this argument. Defendant's attorney stated ahead of time he had no questions to ask of the children. In addition, the trial judge adjourned the remainder of the scheduled proceedings on the day the children testified, following their testimony, so that defendant's attorney could appear in person for the remainder of the trial.

Defendant argues the trial court deprived him of due process because "[a]fter learning of the ALJ's decision reversing the substantiation of sexual abuse, [the Division] altered the manner in which it attempted to proceed with the trial." However, defendant did not raise the issue at trial, and therefore cannot raise this issue on appeal. State v. McNair, 60 N.J. 8, 9 (1972); State v. Johnson, 203 N.J. Super. 127, 133 (App. Div. 1985).

Next, defendant wanted his mother to testify to rebut Dr. Katz. Defendant requested she testify via telephone because of health concerns and because she lived out of state. To allow testimony via telephone, a proponent must demonstrate two elements: 1) there exists an exigency or special circumstances

12

compelling phone testimony over live testimony; and 2) there exists some "circumstantial voucher of the integrity of the testimony" and the witness's identity and credentials are known. State v. Santos, 210 N.J. 129, 141 (2012) (citing Aqua Marine Products, Inc. v. Pathe Computer Control Corp., 229 N.J. Super. 264, 275 (App. Div. 1988)). Here, neither the Division nor the Law Guardian had ever spoken with defendant's mother. As such, neither party could confirm her voice or identity via telephone, preventing defendant from satisfying the second element of the test. Accordingly, the court did not improperly deny the telephone testimony.

Defendant also makes three claims of ineffective assistance of counsel: 1) trial counsel inappropriately agreed to appear by telephone during the children's testimony; 2) trial counsel failed to sequester the Division's expert during the collateral estoppel motion; and 3) trial counsel failed to object to the introduction of reports of non-testifying experts.

Parents in a termination proceeding have a right to effective assistance of counsel. N.J. Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 303 (2007). To state a claim for ineffective assistance, one must demonstrate: 1) counsel's performance fell outside the broad range of professionally acceptable performance; and 2) counsel's deficient performance prejudiced the defense –

13

i.e., there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Ibid. Courts recognize a "strong presumption" that counsel's assistance was reasonable and effective. Ibid.

"[A]ppellate counsel must provide a detailed exposition of how the trial lawyer fell short and a statement regarding why the result would have been different had the lawyer's performance not been deficient. That will include the requirement of an evidentiary proffer in appropriate cases." Ibid. Critically, defendant does not identify any prejudice suffered as a result of the alleged ineffective assistance. As a result, defendant cannot succeed on an ineffective assistance claim.

Lastly, defendant argues the Division failed to satisfy the best interest standard required in termination proceedings. To obtain termination of parental rights, the Division must satisfy all four prongs of the following test:

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause

serious and enduring emotional or psychological harm to the child;

(3) The Division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C:15.1(a).]

These four prongs are neither discrete nor separate, but overlap "to provide a comprehensive standard that identifies a child's best interests." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012) (citing N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 606-07 (2007)). "The considerations involved are extremely fact sensitive and require particularized evidence that address[es] the specific circumstance in the given case." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 554 (2014) (alteration in original) (citing N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 28 (2007)). The Division must prove by clear and convincing evidence all four statutory prongs. Ibid. We will not overturn a family court's findings unless they were "so wide of the mark that the judge was clearly mistaken." G.L., 191 N.J. at 605.

The first prong of the best interest test requires the judge to determine whether "the child's safety, health, or development has been or will continue to be endangered by the parental relationship."  N.J.S.A. 30:4C-15.1(a).  The analysis examines the impact of harm caused by the parent-child relationship on the child's health over time.  N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 506 (2004).  The analysis does not "concentrate on a single or isolated harm or past harm" but rather focuses on "the effect of harms" arising over time.  In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999).  The court is not concerned only with actual harm to the children, but also with the risk of future harm.  In re Guardianship of DMH, 161 N.J. 365, 383 (1999).  Further, the harm need not be physical, as emotional or psychological harm may suffice.  In re Guardianship of K.L.F., 129 N.J. 32, 44 (1992).

Here, the judge found the children credible witnesses.  Victor testified his father acted violently towards his mother.  In addition, he often hit him hard enough to make him cry.  His father scared him, touched him in the shower, and made him undress and get into bed with him.  Defendant paid his adult step-daughter for sex so she could buy drugs.  Sara testified defendant would touch her vaginal area, and that she witnessed defendant choking her mother.  Like

Victor, Sara did not feel safe around defendant. These facts demonstrate sufficient harm to the children in satisfaction of prong one.

Under prong two, the Division must demonstrate "not only that the child's health and development have been and continue to be endangered, but also that the harm is likely to continue because the parent is unable or unwilling to overcome or remove the harm." K.H.O., 161 N.J. at 348. The Division may satisfy this prong by demonstrating the parent's inability or unwillingness to resolve issues that are detrimental to the child. See N.J. Div of Youth & Family Servs. v. B.G.S., 291 N.J. Super. 582, 592 (App. Div. 1996). This prong determines whether "the parent has cured and overcome the initial harm that endangered the health, safety, or welfare of the child, and is able to continue a parental relationship without recurrent harm to the child." K.H.O., 161 N.J. at 348 (citing In re Guardianship of J.C., 129 N.J. 1, 10 (1992)).

Defendant's relies on his contention that prong one was not met by the Division: if he did not harm the children, he could not resolve any harm. This argument clearly lacks merit based upon the substantial evidence that defendant harmed and endangered his children.

With the third element, the Division must prove it "has made reasonable efforts to provide services to help the parent correct the circumstances which led

to the child's placement outside the home and the court has considered alternatives to termination of parental rights." N.J.S.A. 30:4C-15.1(a). The analysis "contemplates efforts that focus on reunification of the parent with the child and assistance to the parent to correct and overcome those circumstances that necessitated the placement of the child into foster care." K.H.O., 161 N.J. at 354.

Throughout the course of the litigation, the Division offered defendant therapy; in addition, the Division offered psychological and psychiatric evaluations in an attempt to create a plan for reunification. Defendant failed to accept these services and also lost contact with the Division for significant periods of time. At one point, the Division requested a search of Delaware records in an effort to locate defendant so it could work on reuniting him with his children. The record demonstrates the Division made reasonable efforts to assist defendant.

Lastly, the Division must demonstrate that "termination of parental rights will not do more harm than good." N.J.S.A. 30:4C-15.1(a). The issue "is not whether a biological mother or father is a worthy parent, but whether a child's interest will best be served by completely terminating the child's relationship with that parent." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 108

(2008).

To satisfy this prong of the analysis, the Division must "offer testimony of a 'well-qualified expert who has had full opportunity to make a comprehensive, objective, and informed evaluation' of the child's relationship with both the natural parents and the foster parents." N.J. Div. of Youth & Family Servs. v. A.R., 405 N.J. Super. 418, 442 (App. Div. 2009). The Division "must prove by clear and convincing evidence that separating the child from his or her foster parents would cause serious and enduring emotional or psychological harm." J.C., 129 N.J. at 19.

Here, the children both requested to stay with their brother and his girlfriend. Both wished to be adopted by them, and expressed a strong desire not return to their father's care.

Further, Dr. Katz testified defendant possessed a "lack of understanding of boundaries, lack of judgment, lack of empathy, and failure to protect his children's interests." The children's brother, on the other hand, developed a strong attachment with them. According to Dr. Katz, removing the children from their brother would cause significant, enduring, and catastrophic harm on them. Defendant, however, could not mitigate the harm of removing the children from their brother. Accordingly, we conclude the Division provided

sufficient evidence to satisfy prong four.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION